[Cite as *State v. Nolan*, 2016-Ohio-2985.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  9-15-48

      v.

KELLI L. NOLAN,                          O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion Municipal Court
Trial Court No. CRB15-1256

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   May 16, 2016

APPEARANCES:

    *Sheena Bateman-Carothers and M. Galen Billow* for Appellant

    *Mark D. Russell* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Kelli L. Nolan, appeals the November 13, 2015 judgment of the Marion Municipal Court accepting her plea of no contest, convicting, and sentencing her on one count of failure to confine her dog, in violation of R.C. 955.22(C), a misdemeanor of the fourth degree. On appeal, Nolan assigns several errors with the trial court's sentence.

{¶2} On June 3, 2015, Nolan was cited for failing to confine her dog. The charge stemmed from Nolan's dog, a Rhodesian Ridgeback named "Lacy," becoming loose from her tether in Nolan's backyard and attacking Ann B.'s dog, a fox terrier named "Foxy."[1] Foxy suffered serious injuries as a result of the attack, which required Ann B. to incur a significant veterinary bill to mend Foxy's wounds. The citation noted that this was Nolan's second offense. The record indicates that the first offense occurred four months prior and involved a similar set of circumstances with Foxy.

{¶3} On September 10, 2015, Nolan entered a plea of no contest. The trial court accepted her plea and found Nolan guilty.

{¶4} On November 13, 2015, the trial court conducted a sentencing hearing where three witnesses testified. Two neighbors of Nolan and Ann B. testified for the prosecution and expressed their concern for safety with Lacy in the

---

[1] Ann B. is Nolan's neighbor.

neighborhood. One witness, Robert Peters, recalled an incident where Lacy was unrestrained and charged him and his dog as they walked past Nolan's house. He explained that when his dog immediately rolled on its back into a submissive position, Lacy sniffed his dog, did not attack, eventually lost interest, and walked away. Peters also recalled his encounters with Foxy and stated that she always played well with his dog. Since Lacy's last attack on Foxy, Peters no longer passed Nolan's property on his walks with his dog. He also "forbid" his grandchildren from venturing near Nolan's house because of Lacy. (Tr. at 8).

{¶5} The other witness, Jack Bull, stated he was concerned for the neighborhood's safety reputation with Lacy present and worried about the re-sale value of his home. He further recalled seeing Lacy off her tether a few months prior to the November hearing—and after the second incident with Foxy. However, he conceded that he never saw Lacy attack anyone or be aggressive.

{¶6} Nolan also provided testimony. She explained that during the first incident in February 2015, the hook on the tether had broken allowing Lacy to run into Ann B.'s yard. Nolan claimed that she immediately paid the veterinary bill for the injuries Foxy sustained from the first incident and took measures to more securely confine Lacy. Specifically, she purchased a body harness and a triple braided boat rope with an industrial clip to tether Lacy to a horse hitch in the ground. She had placed Lacy on the tether on the date of the second incident.

Nolan recalled that on that day the doorbell rang and when she answered the door, two older children were there holding Lacy by her body harness and informed Nolan that Lacy had just attacked Foxy again. Nolan inspected the tether and body harness which appeared to be intact. Nolan expressed her disbelief as to how Lacy had broken free from the tether for a second time. According to Nolan, Lacy had never shown aggression toward humans and usually played well with other dogs. She explained that Lacy does not like other aggressive animals and claimed that she observed Foxy showing aggression toward people and other dogs while tethered in Ann B.'s front yard.

{¶7} Nolan acknowledged that at a pre-trial in June for the second offense, the trial court instructed her to obtain a muzzle for Lacy, with which she complied. She also claimed that Lacy had been constantly supervised since the second incident and muzzled while outside. Nolan relayed her efforts to install a fence on her property and indicated there were some obstacles in completing that task. She explained that there was no survey of her property on record and she was informed by the zoning authorities that her property would have to be resurveyed. She also contemplated linking a fence to some of her neighbors' existing fences but explained that one of her neighbors had recently sold the property and she would have to wait to discuss the matter with the new owner. As a result, Nolan claimed these setbacks had prevented her from installing a fence on her property.

**{¶8}** In closing statements, the prosecutor explained that the victim, Ann B., decided to install a fence around the rear perimeter of her property after the second offense and submitted a copy of the invoice. The prosecutor claimed that Ann B. installed the fence because Nolan had failed to install her own and requested that the trial court order Nolan to pay for Ann B.'s fence in the amount of $3,160.00, along with other recommendations, which were considered by the trial court. The trial court then sentenced Nolan to the following.

> **1.)   The Defendant shall be sentence [sic] to 30 days in jail with 20 days suspended.  If fence is completed within 90 days, 10 day jail sentence shall be suspended.**
>
> **2.)   The Defendant shall be fined 250.00 with 100.00 suspended, plus court costs.**
>
> **3.)   The Defendant shall be placed on 3 years community control with all the ordinary terms and conditions related thereto, with reporting probation.**
>
> **4.)   During the period of CCS the Defendant shall obey the laws of the State of Ohio and its subdivisions.**
>
> **5.)   The Defendant shall make restitution to [sic] through the Municipal Court Probation Department which shall be forwarded to the victim for the veterinary bill of $850.30 within 30 days.**
>
> **6.)   The Defendant shall make restitution to [sic] through the Municipal Court Probation Department which shall be forwarded to the victim [sic] for the costs incurred to protect the victim [sic] dog from further attacks associated with their having to complete their rear yard fencing in the amount of $3,160.00 which shall be paid at the rate of no less than $200.00 per month starting within 30 days of the date of this Entry.**

**7.) The Defendant shall stay no less than 150 feet away from the victims, Foxey [sic], Ann [B.], Sarah [B.] or their family members.**

**8.) Within 24 hours (by 1 p.m. Saturday November 14, 2015) the Defendant shall place her canine Lacey [sic] at another safe environment which has a proper fence to keep the dog confined. Whenever the dog is off the premises of its placement or its habitat it shall be muzzled and on a short tether maintained by an adult.**

**9.) The dog shall not return to the Defendant's residence until she has constructed an adequate fence of no less than 4 feet in height from which the dog may not escape. Whenever the dog is off the premises of its placement or its habitat it shall be muzzled and on a short tether maintained by an adult.**

(Doc. No. 21).

{¶9} Nolan filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FOLLOW R.C. 955.99 IN SENTENCING KELLI NOLAN.**

### ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING KELLI NOLAN TO PAY $3,160 FOR COSTS INCURRED BY ANN [B.] TO COMPLETE A FENCE ON HER PROPERTY.**

### ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING KELLI NOLAN TO COMMUNITY**

**CONTROL SANCTIONS, WITH THREE (3) YEARS OF REPORTING PROBATION.**

**ASSIGNMENT OF ERROR NO. IV**

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FOLLOW THE SENTENCING PRINCIPALS AND GUIDELINES PROVIDED UNDER R.C. 2929.21 AND 2929.22.**

{¶10} Due to the fact that Nolan's assignments of error each challenge a specific component of the trial court's sentence, we elect to address them together for ease of discussion.

{¶11} On appeal, Nolan asserts several errors with the trial court's sentence and claims the trial court exceeded its authority in imposing its sentence. Specifically, Nolan argues that the trial court failed to properly consider the purposes and principals of misdemeanor sentencing when it imposed a suspended thirty-day jail sentence, three years of community control with reporting probation and other conditions—which included building a fence and rehoming Lacy until the fence is complete, and ordered her to pay restitution to Ann B. for the cost of installing a fence.

{¶12} We review a trial court's sentence on a misdemeanor violation under an abuse of discretion standard. R.C. 2929.22; *State v. Frazier*, 158 Ohio App.3d 407, 2004-Ohio-4506, ¶ 15 (1st Dist.). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*,

62 Ohio St.2d 151, 157 (1980). A trial court must consider the criteria of R.C. 2929.22 and the principles of R.C. 2929.21 before imposing a misdemeanor sentence. *State v. Crable*, 7th Dist. Belmont No. 04 BE 17, 2004-Ohio-6812, ¶ 24. Section 2929.22(A) of the Revised Code gives the trial court discretion in determining the most effective way to achieve the purposes and principles of sentencing. Section R.C. 2929.22(B) of the Revised Code sets forth specific factors for the trial court to consider before imposing a sentence, including the nature and circumstances of the offense, the offender's history of criminal conduct, the victim's circumstances, and the likelihood that the offender will commit future crimes.

*Jail Term and Community Control Sanctions*

{¶13} Nolan was convicted of failure to confine her dog in violation of R.C. 955.22, which states:

**(C) Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:**

**(1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;**

**(2) Keep the dog under the reasonable control of some person.**

{¶14} In addition to the statutes governing misdemeanor sentencing, R.C. 955.99 provides for penalties corresponding to the offense and states as follows:

**(E)(1) Whoever violates section 955.21 of the Revised Code, violates division (B) of section 955.22 of the Revised Code, or commits a violation of division (C) of section 955.22 of the Revised Code that involves a dog that is not a nuisance dog, dangerous dog, or vicious dog shall be fined not less than twenty-five dollars or more than one hundred dollars on a first offense, and on each subsequent offense shall be fined not less than seventy-five dollars or more than two hundred fifty dollars and may be imprisoned for not more than thirty days.**

**(2) In addition to the penalties prescribed in division (E)(1) of this section, if the offender is guilty of a violation of division (B) of section 955.22 of the Revised Code or a violation of division (C) of section 955.22 of the Revised Code that involves a dog that is not a nuisance dog, dangerous dog, or vicious dog, the court may order the offender to personally supervise the dog that the offender owns, keeps, or harbors, to cause that dog to complete dog obedience training, or to do both.**

{¶15} The penalty statute, R.C. 955.99, clearly authorizes a court to impose a jail sentence of not more than thirty days, as does the misdemeanor sentencing statute, R.C. 2929.24(A)(4), which permits a court to impose the same sentencing range for a misdemeanor of the fourth degree, the level of offense implicated in this case. Moreover, R.C. 2929.25 expressly authorizes a court to "[i]mpose a jail term under section 2929.24 of the Revised Code from the range of jail terms authorized under that section for the offense, suspend all or a portion of the jail term imposed, and place the offender under a community control sanction or combination of community control sanctions authorized under section 2929.26,

2929.27, or 2929.28 of the Revised Code." R.C. 2929.25(A)(1)(b). The statute further provides that "[t]he duration of all community control sanctions imposed upon an offender and in effect for an offender at any time shall not exceed five years." R.C. 2929.25(A)(2). In addition, R.C. 2929.27(A)(6) specifically permits a trial court to impose a term of basic probation supervision as a community control sanction.

{¶16} In the instant case, Nolan argues that the trial court's sentence was excessive and not supported by the record. Specifically, she claims that the trial court failed to consider mitigating factors which indicate that a lesser sentence in her case was appropriate. As previously mentioned, R.C. 2929.22 guides a court's consideration in imposing a misdemeanor sentence and states, in pertinent part:

> **(B)(1) In determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:**
>
> **(a) The nature and circumstances of the offense or offenses;**
>
> **(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;**
>
> **(c) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive,**

**compulsive, or aggressive behavior with heedless indifference to the consequences;**

**(d)   Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;**

**(e)   Whether the offender is likely to commit future crimes in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section.**

**\* \* \***

**(2) In determining the appropriate sentence for a misdemeanor, in addition to complying with division (B)(1) of this section, the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.**

**(C) Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code.  A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime.**

**(D)(1) A sentencing court shall consider any relevant oral or written statement made by the victim, the defendant, the defense attorney, or the prosecuting authority regarding sentencing for a misdemeanor. This division does not create any rights to notice other than those rights authorized by Chapter 2930. of the Revised Code.**

{¶17} At the sentencing hearing, the trial court heard testimony from people in the neighborhood who expressed safety concerns with the manner in which Nolan attempted to confine Lacy. One witness stated that he altered his walking route to specifically avoid Nolan's property and warned his grandchildren to stay clear of her home because of Nolan's failure to competently restrain Lacy. In addition, the trial court reviewed pictures of Foxy's injuries, which were severe and required five consecutive days of veterinary care. The trial court also received reports that since the second attack on Foxy, and while the case was pending, Lacy had been observed unrestrained and without a muzzle—which violated the trial court's instruction given at a pre-trial.

{¶18} When the trial court solicited her position on these facts, Nolan claimed she always tethered Lacy outside and expressed her confusion as to how Lacy broke free on the second occasion she attacked Foxy. The trial court pressed Nolan regarding the testimony which indicated that Lacy had been observed untethered and not muzzled since the second attack. Nolan denied the veracity of the witness' statements and became argumentative with the trial court over its assessment of the witness' credibility. However, Nolan also indicated that other adults, such as her father and her boyfriend, had handled Lacy when she was not at home and perhaps they did not follow the court's protocol, but she could not say with certainty.

{¶19} Nolan further became defensive when discussing Lacy's temperament and characterized Foxy as an aggressive dog despite the fact that on both occasions Lacy attacked Foxy while Foxy was tethered in Ann B.'s front yard and Lacy was unconfined. Nolan also attempted to divert the focus from Lacy and claim that many other dogs were aggressive and ran the neighborhood unconfined. Finally, the trial court discussed the fact Nolan had indicated at a pre-trial in June that she was going to install a fence on her property to more securely confine Lacy. The trial court expressed its dismay with the fact that at the November sentencing hearing Nolan had not taken any affirmative steps to follow through with her representations regarding the installation of the fence on her property and had only provided excuses as to why the installation had yet to occur.

{¶20} Moreover, we note that even though Nolan expressed concern about Foxy's well-being after the second attack, the record supports the trial court's determination that Nolan did not take accountability for her failure to adequately confine Lacy and to comprehend the serious nature of the circumstances which should have prompted Nolan to take immediate action and significantly adjust her practices of confining Lacy to prevent the repetition of the same event in future. Thus, we find no abuse of discretion in the trial court's decision to impose a suspended jail term and three years of community control sanctions.

**{¶21}** Nolan also asserts that the trial court was without the authority to impose certain community control sanctions. Specifically, Nolan takes issue with the trial court requiring her to install a fence on her property and remove Lacy from her home until she completes the project. She also objects to the trial court ordering her to keep Lacy muzzled and on a short tether maintained by an adult when she is off Nolan's property. Nolan contends that the trial court is limited to imposing the penalties described in R.C. 955.99(E) and claims the trial court's sentence is misguided because it erroneously imposed restrictions for confinement akin to those outlined in R.C. 955.22(D) for "dangerous dogs," which Lacy is not.[2]

**{¶22}** Notably, Nolan has not provided us with any authority to substantiate her position that the trial court is limited in this case to only imposing the penalties listed in R.C. 955.99(E). To the contrary, R.C. 2929.27(C) provides that "the court imposing a sentence for a misdemeanor, other than a minor misdemeanor, upon an offender who is not required to serve a mandatory jail term may impose any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." Thus, the sentencing court can impose additional conditions aimed at preserving the interests of justice, protection of the community, and the rehabilitation of the offender. In

---

[2] *See* R.C. 955.11(A)(1)(a)(defining a "dangerous dog" as a dog that, without provocation (i) Caused injury, other than killing or serious injury, to any person; (ii) Killed another dog; or (iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code).

describing conditions of probation, a term then used to describe suspended sentences for misdemeanors, the Supreme Court of Ohio in *State v. Jones* stated that "courts should consider whether the condition [of probation] (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to the conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." 49 Ohio St.3d 51, 53 (1990).

{¶23} Section 955.22(C) of the Revised Code, the statute delineating the offense, states that the owner of a dog shall (1) keep the dog "confined or restrained upon the premises * * * by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape" or (2) "Keep the dog under the reasonable control of some person." *Id.* The record establishes that Nolan failed to effectively utilize the methods of confinement by leash, tether or supervision (by the owner or other person) to keep Lacy on her property. The remaining methods of confinement mentioned in the statute are adequate fencing or a secure enclosure. Nolan represented to the trial court that she intended to install adequate fencing on her property to prevent Lacy from escaping in the future. However, Nolan failed to take the necessary steps to accomplish this task. As a result, the trial court imposed a thirty-day jail sentence with twenty days suspended upon Nolan. The trial court suspended the last ten days of the jail term upon the

specific condition that Nolan install a fence within 90 days of the judgment in accordance with her representations to the court.

**{¶24}** In addition, the record further indicates that Lacy had twice, and apparently unprovoked, attacked the same dog tethered in a neighbor's yard, which reasonably justifies the trial court's concerns regarding Lacy's potentially aggressive nature and substantiates the additional security provided by the conditions on Lacy's placement until the fence is completed as well as the increased restrictions of her handling when she off Nolan's property.

**{¶25}** As previously discussed, R.C. 2929.25 authorizes a sentencing court to impose a jail term, suspend all or a portion of the jail term, and place the offender under a community control sanction or combination of community control sanctions. Given these facts, we cannot say that the trial court abused its discretion in imposing a thirty-day jail term, suspended on Nolan's compliance with certain directives, and three years of community control with reporting probation. Moreover, we find that the community control sanctions related to Nolan's confinement and handling of Lacy clearly bear a relationship to the offense at issue, are related to rehabilitating Nolan, and are fashioned to prevent future offenses of failing to confine Lacy. Accordingly, we overrule Nolan's first, third, and fourth assignments of error.

*Restitution*

**{¶26}** Nolan also claims that the trial court erred in assessing the amount of restitution she must pay to Ann B.  Section 2929.28 of the Revised Code governs financial sanctions, including restitution in misdemeanor cases, and states in relevant part:

**(A)  In addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. If the court in its discretion imposes one or more financial sanctions, the financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:**

**(1)   Unless the misdemeanor offense is a minor misdemeanor or could be disposed of by the traffic violations bureau serving the court under Traffic Rule 13, restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss.  The court may not impose restitution as a sanction pursuant to this division if the offense is a minor misdemeanor or could be disposed of by the traffic violations bureau serving the court under Traffic Rule 13. If the court requires restitution, the court shall order that the restitution be made to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim.**

**If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender.  If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that *the amount the court orders as restitution shall not exceed the amount of the economic loss***

> ***suffered by the victim as a direct and proximate result of the commission of the offense.** **If the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution. If the court holds an evidentiary hearing, at the hearing the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender.***
>
> ***All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender. * * ****

{¶27} By enacting R.C. 2929.28(A), the state legislature limited a trial court's authority to impose restitution as part of a criminal sentence for misdemeanor convictions. *See State v. Dremsek*, 5th Dist. Delaware No. 09 CAC 020010, 2009-Ohio-6437, ¶¶ 18-19. The statute permits the trial court to order restitution for economic loss suffered by the victim for certain misdemeanor offenses, provided the amount of restitution "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.28(A)(1). "Economic loss" is statutorily defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." R.C. 2929.01(L).

{¶28} In the case sub judice, the trial court's restitution order consisted of two parts: (1) $850.30 for the veterinary bill Ann B. incurred as a result of the second attack on Foxy; and (2) $3,160.00 which was the amount Ann B. spent to install a fence around the rear perimeter of her property three months after the

second offense occurred. On appeal, Nolan appears to concede that the veterinary bill was a direct and proximate result of the commission of the offense—i.e., Nolan failing to confine Lacy. However, Nolan quarrels with the trial court's order of restitution regarding Ann B.'s fence. Specifically, Nolan argues that the installation of a fence months after the offense does not meet the statutory definition of economic loss suffered by Ann B. as a direct and proximate result of the commission of the offense.

{¶29} In this instance, we find that Nolan's arguments have merit with respect to the trial court's restitution order regarding Ann B.'s fence. The record fails to establish that Ann B.'s subsequent decision to install a fence around the rear portion of her property constituted an economic detriment suffered as a direct and proximate result of Nolan's failure to confine Lacy. This is true especially in light of the fact that Foxy was tied in the front yard when the attacks occurred and that the rear perimeter fence was installed three months after the second attack. Accordingly, we find that the trial court erred in including the $3,160.00 for the installation of Ann B.'s fence in the restitution order. To this extent only, the judgment is reversed and the second assignment of error is sustained.

{¶30} For all these reasons, the first, third, and fourth assignments of error are overruled and the second assignment of error is sustained. The judgment is

-19-

affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**